*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

UNPUBLISHED
March 31, 2022

v

No. 356731
Ionia Circuit Court
LC No. 2020-018027-FH

CARL LEE HARBENSKI,

      Defendant-Appellant.

Before: O'BRIEN, P.J., and SHAPIRO and BOONSTRA, JJ.

BOONSTRA, J. (*concurring*).

I fully concur in Part II.A. of the majority opinion. I concur in the result of Part II.B. of the majority opinion. In doing so, I agree that the trial court plainly erred by sentencing defendant by videoconference without securing his personal waiver of his right to be physically present for sentencing.[1] The trial court instead errantly relied on the pendency of a public health crisis, on defense counsel having coordinated defendant's appearance at the videoconference sentencing, and on defendant's failure to object to proceeding with the sentencing by videoconference.[2]

As a result, I have no serious qualms about remanding this matter for in-person sentencing (or for videoconference sentencing with an express waiver). However, the majority goes farther

---

[1] MCR 6.006(A) authorizes trial courts to conduct various criminal proceedings by videoconference. Among the proceedings so authorized are "sentencings for misdemeanor offenses." *Id*. By implication, therefore, the court rule does not authorize sentencings by videoconference for felony offenses, such as those of which defendant was convicted.

[2] At the beginning of the videoconference sentencing hearing, defense counsel indicated that defendant wished to withdraw his no-contest plea. However, when given the opportunity to explain why, defendant stated that he wished to proceed to sentencing without moving to withdraw his plea. Yet, defendant was not expressly asked whether he waived his right to be physically present for sentencing.

to declare for the first time that the trial court's error was not only a violation of the court rule, but that it was constitutional error, and further that it was not only constitutional error, but that it was *structural*, constitutional error that *automatically* satisfies the third (i.e., "prejudice") prong of plain-error analysis,[3] and that also presumptively satisfies the fourth prong of that analysis.[4] But stretching the law to reach that result in this case is both unnecessary and ill-advised. Other than citing to *People v Heller*, 316 Mich App 314; 891 NW2d 541 (2016), the parties have not addressed the constitutional nature of the error, and nowhere have they addressed whether the error, even if a constitutional one, was a *structural* error. And, on inspection, the reed on which the majority relies for declaring it to be such is a thin one.

The majority bases its conclusion on this Court's decision in *Heller*. Yet, the majority seemingly acknowledges that *Heller* did not decide the issue; the majority instead opines that *Heller* "strongly indicated" that the lack of in-person sentencing for felony convictions was structural error because it stated that sentencing by videoconference was "fundamentally unfair." *Heller* indeed did state the latter, but without any citation or analysis. *Heller*, 316 Mich App at 321. For wholly unrelated reasons, *Heller* remanded for further consideration of the defendant's sentence under *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), and *United States v Crosby*, 397 F3d 103 (CA 2, 2005). *Heller*, 316 Mich App at 317. The *Heller* panel then concluded that if the defendant elected to be resentenced, he must be physically present in the courtroom, musing that our Supreme Court had omitted felony sentences from MCR 6.006(A) "[p]resumably because sentencing is a critical stage of a criminal proceeding at which a defendant has a constitutional right to be present." *Heller*, 316 Mich App at 318. For that proposition, *Heller* cited *People v Mallory*, 421 Mich 229; 365 NW2d 673 (1984). However, *Mallory* had nothing to do with *sentencing*. Instead, in *Mallory*, our Supreme Court reversed the defendants' *convictions* as a result of evidentiary errors, as well as the exclusion of the defendants from the jury view of the crime scene. The Court did, in passing, mention the "imposition of sentencing" as being among the stages of a criminal proceeding at which a defendant has a right to be. But it nowhere held or intimated that the lack of in-person sentencing was a *structural*, constitutional error.[5]

---

[3] As the majority notes, "[t]he third requirement [of plain-error analysis] generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

[4] As the majority also notes, the fourth prong of plain-error analysis requires that the error must have resulted in the conviction of an actually innocent defendant or "seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted). See also *People v Vaughn*, 491 Mich 642, 665; 821 NW2d 288 (2013).

[5] *Heller* also cited *United States v Villano (On Rehearing)*, 816 F2d 1448 (CA 10, 1987). *Villano*, however, merely addressed whether a trial court's unambiguous oral sentence would control over a discrepancy with a written order of commitment. *Id*. at 1451-1452. *Heller*'s citation to *People v Triplett*, 407 Mich 510; 287 NW2d 165 (1980), is even less consequential; *Triplett* merely held

The United States Supreme Court has recognized that "most constitutional errors can be harmless." *Neder v United States*, 527 US 1, 8; 119 S Ct 1827; 144 L Ed 2d 35 (1999), citing *Arizona v Fulminante*,499 US 279, 306; 111 S Ct 1246; 113 L Ed 2d 302 (1991). The Court in *Neder* stressed that the class of errors that are "structural" is a very narrow one:

> "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis." *Rose v. Clark,* 478 U.S. 570, 579, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). Indeed, we have found an error to be "structural," and thus subject to automatic reversal, only in a "very limited class of cases." *Johnson v. United States,* 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (citing *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (complete denial of counsel); *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (biased trial judge); *Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (racial discrimination in selection of grand jury); *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial of self-representation at trial); *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (denial of public trial); *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (defective reasonable-doubt instruction). [*Neder*, 527 US at 8.]

On the current record, I conclude not only that it is unnecessary to reach this issue in this case, but that we as a Court are not in a position at this juncture, in this COVID-era case, without the benefit of focused briefing or argument, to so cavalierly define a videoconferencing sentencing as a member of the narrowly-described and limited class of errors that should henceforth be deemed "structural." And that is particularly true now that our Supreme Court has seen fit to declare that structural errors automatically satisfy the third prong of plain-error review and presumptively satisfy the fourth-prong of plain-error review. See *People v Davis*, ___ Mich ___; ___ NW2d ___ (2022) (Docket No. 161396).[6] In my judgment, such result-driven decisions do

---

that a reasonably-updated presentence report is important for a defendant's individualized sentencing determination. *Id*. at 515-516. And *Heller*'s citation to a dissenting opinion in *United States v Davern*, 970 F 2d 1490, 1516 (CA 6, 1992) (JONES, J., dissenting), is precisely that – a citation to a dissenting opinion in another case that had nothing to do with in-person or remote sentencing issues, or with structural or non-structural errors.

[6] I share Justice ZAHRA's expressed concern with the process by which the Court in *Davis* reached its decision (without regard to whether it was legally correct), in that the Court appears to have opted to revamp the preexisting plain-error framework sua sponte and without receiving input from the parties or other interested persons or groups. See *People v Davis*, ___ Mich ___; ___ NW2d ___ (2022) (Docket No. 161396) (ZAHRA, J., concurring in the result). See also *People v Hammerlund*, ___ Mich App ___; ___ NW2d ___ (2021) (Docket No. 355120) (BOONSTRA, J, dissenting) ("If this is indeed how our system of justice is going to operate, then one might fairly wonder why we don't simply skip the fact-finding and initial decision-making that by design take place in the trial courts of this state, and the deliberations that subsequently occur in this Court on an initial appeal, and instead simply 'Advance to Go' in the Supreme Court.").

not make for good law or sound judicial decision-making; in my view, reviewing courts applying such decisions should be even more vigilant about unnecessarily extending such decisions to new factual or legal situations. For these reasons, I concur in the majority's decision to remand for resentencing (or in affording defendant the opportunity to waive his right to in-person sentencing), but would do so without reaching the structural error issue.


/s/ Mark T. Boonstra