# Order

**Michigan Supreme Court**
**Lansing, Michigan**

July 19, 2019

159186

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellant,

v

JILL ANN TUCKER,
      Defendant-Appellee.

SC: 159186
COA: 338514
Livingston CC: 2016-023886-FH

_____/

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

On order of the Court, the application for leave to appeal the January 24, 2019 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

CLEMENT, J. (*dissenting*).

I dissent from the Court's denial of leave to appeal. Because I do not believe defendant is entitled to relief under the best evidence rule, I would reverse the Court of Appeals and remand to that Court for consideration of the issues raised by defendant which that Court did not reach.

Defendant was charged with, *inter alia*, violating MCL 750.411s by "texting" certain nude photographs of a female coworker to several male coworkers of defendant and the victim, as well as with sending the pictures to defendant's boyfriend, a police officer. The photos were apparently retrieved from the victim's cell phone. Trial was scheduled to begin on March 6, 2017. On February 15, 2017, defense counsel filed a motion in limine alleging that the prosecutor's office had, on February 9, disclosed screen shots captured from the police officer's phone that were images of text messages between the officer and defendant regarding these events. Defendant asked that the screen shots be excluded from the trial because they had not been properly disclosed in discovery. At a heated hearing on the motion on March 1, the prosecutor asserted that he was unaware of the existence of any such text messages until a phone conversation he had with the police officer on February 8 disclosed their existence. The officer sent the material to the prosecutor, and the prosecutor notified defense counsel—resulting in defendant's motion the following day. The trial court concluded "that the prosecutor, I do not believe was acting in bad faith." The court chalked up any failure to provide proper discovery to there having been "too many hands that . . . handled this file from one to the other that caused a gap in the . . . prosecutor . . . discovering these screen shots on this phone," but the court did not believe the prosecutor was acting in bad faith "in light of the statements of the prosecutor as to how quick he reacted after he . . . became aware of . . . that

information." The judge denied the motion to exclude the photos and directed the lawyers to "meet between [March 1] and [March 6] and look at that phone."

On March 6, the trial began. While giving the jury preliminary instructions, the court instructed the jury that defendant was charged with having violated MCL 750.411s, which involved "the defendant [having] sent nude photographs of [the victim] to other people." After the jury was instructed, defense counsel said he had "never received nor have I ever seen any nude . . . pictures of" the victim. A heated exchange ensued, in which the prosecutor said that he offered to show the photos to defense counsel when defense counsel came to the prosecutor's office; the prosecutor said defense counsel had represented that he did not need to see the pictures. Defense counsel accused the prosecutor of having lied and insisted that lack of access to the photos had denied the defendant an opportunity to scrutinize the authenticity of the photographs. The trial court asked the prosecutor whether he had provided the photos to defense counsel and had this exchange:

> [*The Prosecutor*]: I did not make copies of them because they're naked—
>
> *The Court*: All right. Did you show it to him?
>
> [*The Prosecutor*]: I offered them.
>
> *The Court*: Did you show those? I'm going to, you're, this case, you're going to proceed without those photos going in. You may make reference to them. I'm not going to have those photos going in.
>
> [*The Prosecutor*]: Judge what's the basis?
>
> *The Court*: Basis of that [defense counsel] has . . . argued in the past about having some . . . discovery . . . issues come forward and we went so far as last week as . . . having you two gentlemen meet to go over text messages . . . so that everybody could know what evidence was going on. If this evidence of these photographs that have been in a sealed envelope and they haven't been shown to . . . this defense lawyer . . . , we're just going to have to go forward without these photographs. You can make reference to them as to whoever took them or whatever but they're not going to be shown to the jury. That's my ruling.
>
> [*Defense Counsel*]: Thank you, your Honor.
>
> *The Court*: Those photos are suppressed for coming in. You get them in, you can make reference to them about whoever took them and so forth but the pictures won't be displayed to the jury.

During trial, several witnesses testified about the photos. The victim testified that she had had several "nude" photos of herself on her cell phone; a coworker to whom the

photos had been sent characterized it as a "graphic picture"; and the officer testified that he was "repulsed" by what he saw in the photos.  Defendant was found guilty by the jury.

In the Court of Appeals, defendant raised two issues: first, that the trial court erred (1) "by allowing testimony about the content of alleged texted photographs that were suppressed prior to trial and never admitted into evidence, thus violating MRE 1002, the Best Evidence Rule"; and (2) "by allowing the admission of text messages that were intentionally withheld by the police and/or prosecutor until days before trial and which were never properly authenticated under MRE 901."  In her brief, defendant argued that "the Prosecutor's decision to withhold the pictures . . . precluded her from having an opportunity to assess the content and authenticity of the alleged text messages and prevented defense counsel from arguing whether those pictures were sufficient to support the charged offenses."  The Court of Appeals agreed, holding in an unpublished opinion that "the trial court abused its discretion by admitting the aforementioned testimony, as it allowed the prosecution to have the content of the excluded photographs admitted into evidence despite MRE 1002 and the trial court's own ruling excluding the photographs." *People v Tucker*, unpublished per curiam opinion of the Court of Appeals, issued January 24, 2019 (Docket No. 338514), p 3.  "Where the photographs were neither lost nor destroyed, the prosecution was required to present the actual photographs for their contents . . . to come into evidence."  *Id*.  The Court thus reversed certain of defendant's convictions and remanded for resentencing on the remaining convictions.

The "best evidence rule," MRE 1002, provides that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute."  However, we have said that the purpose of the rule is that "where some document . . . exists, the contents of which should be proved by an original rather than by other testimony, *which is open to danger of inaccuracy*."  *Elliott v Van Buren*, 33 Mich 49, 53 (1875) (emphasis added). Consequently, "[t]he best evidence rule only applies when the contents of a writing are in issue."  *People v Alexander*, 112 Mich App 74, 76 (1981).  Where "the contents are not in issue, . . . the rule should not . . . be[] invoked."  *Id*.

> Th[e] purpose [of the best-evidence rule] is to secure the most reliable information as to the contents of documents, when those terms are disputed. A mystical ideal of seeking "the best evidence" or the "original document" as an end in itself is no longer the goal.  Consequently when an attack is made on appeal on the judge's admission of secondary evidence, it seems that the reviewing tribunal should ordinarily make inquiry of the complaining counsel, "Does the party whom you represent actually dispute the accuracy of the evidence received as to the material terms of the writing?"  If the counsel cannot assure the court that such a good faith dispute exists, it seems clear that any departure from the regulations in respect to secondary evidence is likely to be harmless error, or not error at

all. [2 McCormick, Evidence (7th ed), § 243.1, p 173 (as amended by the 2016 pocket part).]

Or, as we have said, "th[e] so-called best evidence rule is generally more nearly a rule of procedure." *Mich Bankers' Ass'n v Ocean Accident & Guarantee Corp*, 274 Mich 470, 481 (1936). Where the party challenging the evidence cannot show that the procedure caused them prejudice, relief is not available. See also 6 Weinstein & Berger, Weinstein's Federal Evidence (2d ed, rel 103-4/2012), § 1002.04[3], p 1002-9 ("The function of the best evidence rule today is not to accord victory to the party who best follows the rules, but to ensure that the trier of fact is presented with the most accurate evidence practicable in those situations where informed legal judgment has concluded that precision is essential."); 31 Wright & Gold, Federal Practice & Procedure: Evidence (1st ed), § 7184, p 394 ("[E]rror under Rule 1002 in the admission . . . of evidence is not ground for reversal if the error is harmless. Thus, reversal will not be granted based on erroneous admission of secondary evidence unless there is a real possibility it was inaccurate and outcome determinative.").

In this case, defendant has *not* placed the contents of these photos at issue, and makes no assertion on appeal that the witnesses who testified about the photos offered inaccurate or unfair characterizations of the photos. In other words, defendant did not challenge whether the photos actually were nude photos, nor did defendant challenge whether the photos actually depicted the victim. Defendant's objection to the introduction of the photos related to being deprived of an opportunity to scrutinize their *authenticity*, but that is a concern under MRE 901, not MRE 1002. Defendant's cross-examination of the witnesses focused on whether those witnesses had good or bad relationships with defendant and thus called into question whether they were potentially fabricating the allegation that defendant had distributed the photographs. That is a perfectly legitimate defense theory, but it is a defense theory that defendant was just as able to pursue without the original photos in evidence as with them. In the absence of any argument that the witnesses were inaccurately characterizing the photographs, "the error complained of has [not] resulted in a miscarriage of justice," which is the standard that must be met before a "judgment or verdict shall be set aside or reversed or a new trial be granted . . . in any criminal case, on the ground of . . . the improper admission . . . of evidence . . . ." MCL 769.26. And, with that testimony having been admitted, the Court

of Appeals erred in holding that, "[w]ithout the admission of the contents of the photographs, the prosecution did not have sufficient evidence to support defendant's convictions of unlawful posting of a message . . . ." *Tucker*, p 3.

Because I believe that the Court of Appeals misapplied the best-evidence rule, I would reverse its judgment and remand to that Court for consideration of defendant's remaining arguments on appeal.

ZAHRA, J., joins the statement of CLEMENT, J.





I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 19, 2019

Clerk

t0716