*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
July 6, 2023

v

TRAVIS DUANE PARKINS,

        Defendant-Appellant.

No. 361264
Macomb Circuit Court
LC No. 2017-002185-FC

Before: HOOD, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

In 2018, defendant Travis Duane Parkins pleaded guilty to first-degree criminal sexual conduct ("CSC-I"), MCL 750.520b(1)(c) (sexual penetration under circumstances involving the commission of another felony),[1] and the trial court sentenced him to life imprisonment. In a prior appeal, this Court affirmed defendant's conviction and life sentence. In lieu of granting leave to appeal, the Supreme Court vacated defendant's life sentence and remanded the case to the trial court for resentencing. On remand, the trial court again resentenced defendant to life imprisonment. Defendant appeals by leave granted.[2] We conclude that the life sentence imposed by the trial court was unreasonable, and we remand for resentencing before a different trial judge.

## I. BACKGROUND

In defendant's prior appeal, this Court summarized the underlying facts as follows:

---

[1] In exchange for defendant's plea, the prosecution agreed to dismiss two additional counts of CSC-I, one count of enticing a minor under 16 years old for an immoral purpose, MCL 750.13, and one count of using a computer to commit a crime, MCL 752.796.

[2] *People v Parkins*, unpublished order of the Court of Appeals, entered June 27, 2022 (Docket No. 361264).

Parkins' conviction arises from the sexual assault of a 14-year-old female ("the victim") on May 2 and 3, 2018. Parkins met the victim on an Internet website, and the victim's profile listed her age as 14 years old. After meeting on the website, Parkins and the victim started communicating via Skype. Parkins confirmed with the victim that she was 14 years old. Parkins and the victim had conversations about sex, and the victim sent Parkins a picture of her bare breast. On May 2, 2018, Parkins and his roommate, Peter Lindhout, traveled from Ionia County to Macomb County to pick up the victim. After returning to Ionia County, Parkins sexually assaulted the victim by engaging in vaginal intercourse and oral sex with her, touching her breasts and vagina, and biting her. Parkins also encouraged Lindhout to take a "turn" at having vaginal intercourse with the victim.[3]

Parkins was charged in Macomb County with three counts of CSC-I, enticing a minor under 16 years old for an immoral purpose, MCL 750.13, and using a computer to commit a crime, MCL 752.796. The trial court denied Parkins' pre-trial motion to change venue to Ionia County. Thereafter, Parkins pleaded guilty to one count of CSC-I pursuant to a plea agreement whereby the remaining charges were dismissed. [*People v Parkins*, unpublished per curiam opinion of the Court of Appeals, issued January 7, 2020 (Docket No. 345687), pp 1-2.]

The sentencing guidelines recommended a minimum sentence range of 51 to 85 months, and the Michigan Department of Corrections recommended a minimum sentence of 85 months. At sentencing, the trial court imposed a life sentence, giving the following explanation:

With respect, Mr. Parkins, Mr. Parkins, you're a predator. You went online, you knew she was under age, you took advantage of this child repeatedly. The Court has no sympathy for you.

And the maximum period of incarceration the Court can impose for this offense is life or any terms of years. Life appears to be the appropriate sentence. You can't take a child out of the home, molest that child and expect nothing to happen.

On appeal, defendant argued, in part, that a life sentence was unreasonable and disproportionate when the guidelines range was 51 to 85 months' imprisonment. A majority of the panel disagreed with that argument and affirmed the sentence. *Parkins*, unpub op at 3-5.

After defendant filed an application for leave to appeal this Court's decision, the Supreme Court issued the following order remanding to the trial court for resentencing:

On order of the Court, the answer having been received, the application for leave to appeal is again considered and, pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we REVERSE in part the judgment of the Court of

---

[3] Codefendant Lindhout pleaded guilty of third-degree criminal sexual conduct, MCL 750.520d, and was sentenced to 5 to 30 years' imprisonment.

Appeals, VACATE the sentence of the Macomb Circuit Court, and REMAND this case to the trial court for resentencing. As noted by dissenting Judge Shapiro, the trial court did not justify its sentence with appropriate reasons for sentencing the defendant as it did. The trial court simply stated that the sentencing guidelines range was inappropriate, but failed to explain how the guidelines variables did not adequately account for the seriousness of the offense or the character of the offender. See *People v Milbourn*, 435 Mich 630, 660; 461 NW2d 1 (1990). Nor did the trial court adequately explain, for purposes of enabling appellate review, how the extent of the departure—a life sentence out of a guidelines range of 51 to 85 months—was justified, particularly in light of the defendant's minimal prior record. *People v Smith*, 482 Mich 292, 304; 754 NW2d 284 (2008). [*People v Parkins*, 507 Mich 916 (2021).[4]]

At resentencing via Zoom, the trial court again sentenced defendant to life imprisonment. The court identified several factors that it did not believe were adequately accounted for by the sentencing guidelines, namely that defendant used a computer to seduce the victim, "solicit[ing] this child away from her home from another location for purposes of sexual exploitation,"[5] the age differential between defendant and the victim (ages 29 and 14), and that defendant encouraged and agreed to allow the codefendant to also engage in sex with the victim.

Defendant later moved to correct his sentence or for resentencing, which the trial court denied. Defendant now appeals his sentence, asserting that the trial court imposed an unreasonable and disproportionate sentence, among other claims.

## II. THE REASONABLENESS OF DEFENDANT'S DEPARTURE SENTENCE

We review for an abuse of discretion the reasonableness of a trial court's departure sentence.[6] See *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). A sentence is reasonable if it adheres to the principle of proportionality, which "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Walden*, 319 Mich App 344, 351-352; 901 NW2d 142 (2017) (quotation marks and citation omitted). Although the sentencing guidelines are now advisory, the sentencing court still must determine the applicable guidelines and consider the guidelines when imposing a sentence. *Id*. at 351. If the trial court finds that a guideline sentence is not proportional, the court must "justify the sentence imposed in order to facilitate appellate review." *Steanhouse*,

---

[4] The Court denied leave in all other respects. *Parkins*, 507 Mich at 916.

[5] While the charge of using a computer to commit a crime, MCL 752.796, was dismissed as part of the plea agreement, that act was the basis of raising the primary charge from CSC-III to CSC-I as provided for by MCL 750.520b(1)(c). Accordingly, while the guideline variables may not have taken this into account, it resulted in increasing the maximum sentence from 15 years to life and the application of the guidelines for a Class A offense rather than a Class B offense.

[6] "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008).

500 Mich at 470 (quotation marks and citation omitted). Factors relevant to whether a departure sentence is proportionate to the offense and offender include "(1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017).

On remand, the trial court gave several reasons for why a sentence within the guidelines range was not proportionate. While many of the factors identified by the court were taken into account by the offense variables (OV) to some extent, we conclude that the trial court did not abuse its discretion in determining that 51 to 85 months did not reflect the seriousness of the crime. Defendant induced the 14-year-old victim to leave her home in Macomb County and go with him to Iona, repeatedly engaged in sexual penetration and allowed or encouraged his codefendant to do so as well. Although defendant apologized to the victim and her family at the sentencing hearings, his actions showed a total disregard for her wellbeing.

However, while the facts of this case justify a departure sentence, "[e]ven where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality." *Milbourn*, 435 Mich at 660. Accordingly, the trial court must also "explain how the extent of the departure is proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 322 Mich App 233, 239; 911 NW2d 253 (2017).

Defendant was 29 years old at the time of the offense with no prior criminal history. The high end of defendant's guidelines range was 85 months (or 6.75 years), so the imposition of a life sentence was much more than what is commonly referred to as a "substantial departure." For a point of reference, the United States Sentencing Commission defines a life sentence as 470 months (or just over 39 years) to reflect the average life expectancy of federal criminal offenders.[7] Using 470 months as a substitute for life imprisonment, defendant's sentence represents about a 33-year departure sentence, or stated differently, about a 450% departure from the upper limit of the guidelines range.

The trial court did not adequately justify this substantial departure from the guidelines range. The court emphasized defendant's manipulation and exploitation of the victim. But those circumstances are tragically common in child CSC cases. In *People v Lampe*, 327 Mich App 104; 933 NW2d 104 (2019), for example, the defendant befriended the 13-year-old victim and his family and did not disclose that he was a registered sex offender. One night after dinner with the victim's family, the defendant offered to massage the victim and once the victim fell asleep, the defendant removed the victim's clothing. The victim awoke to the defendant on top of him, and the defendant proceeded to penetrate him anally and orally. *Id*. at 109. The defendant was convicted of two counts of CSC-III and one count of CSC-IV and was resentenced to a nine-year minimum sentence, which was 13 months above the high end of the guidelines range. *Id*. at 130. In holding that this sentence did not violate the principle of proportionality, this Court noted that

---

[7] See https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC_2012_Quarter_Report_Final.pdf, pdf p 66 (accessed June 27, 2023).

the departure represented "a relatively modest length of time" and that defendant's sentence was less than the 10-year minimum sentence sought by the prosecution at resentencing. *Id*., citing *Walden*, 319 Mich App at 354-355 (comparing the extent to which the trial court exceeded the guidelines to the sentence requested by the prosecution when determining whether the out-of-guidelines sentence imposed violated the principle of proportionality). In this case, we note that the prosecution requested that the trial court sentence defendant to a 180-month minimum sentence (i.e., 15 years) or alternatively reimpose the life sentence.

The trial court also stated that "it is undoubtedly true that this child was the subject of the defendant's human trafficking of this child to be shared with his friend for sexual gratification." Setting aside whether the circumstances of this case constituted human trafficking, we agree with the trial court's implicit determination that OV 8 (asportation or captivity of a victim)[8] does not sufficiently account for defendant convincing the victim to go with him to Iona, far from her home. We also agree that the fact that defendant invited a second man to engage in sex with the victim is an aggravating circumstance. However, we cannot ignore that codefendant Lindhout pleaded guilty to CSC III, MCL 750.520d, and was sentenced to 5 to 30 years in prison. Although defendant was more culpable than his codefendant, the extraordinary gap between their sentences suggests unreasonableness. See *Dixon-Bey*, 321 Mich App at 524 ("When our Supreme Court adopted the principle of proportionality in *Milbourn*, it noted that it did so, in part, to 'effectively combat unjustified disparity' in sentencing. Therefore, '[o]ne of the purposes of the proportionality requirement is to minimize idiosyncrasies.' ") (citations omitted).

Again, we do not dispute that a departure sentence was warranted in this case but the question is the extent of the departure and whether a life sentence was proportionate to the seriousness of the circumstances surrounding the offense and the offender. *Walden*, 319 Mich App 344, 351-352. For comparison, in *People v Warner*, 339 Mich App 125, 154-155; 981 NW2d 733 (2021), we affirmed a 20-year minimum sentence—with an upper guidelines range of about 10.5 years—when the defendant committed CSC-I against his 13-year old stepdaughter, "blame[d] the victim," and had previously sexually assaulted an adolescent girl. In *People v Barnes*, 332 Mich App 494, 497-498; 957 NW2d 62 (2020), we affirmed a seven-year upward departure from the upper guidelines range for a fourth offense habitual offender who met the adult victim on a telephone "hotline" and instead of taking her sightseeing as promised drove her to secluded area and forcibly penetrated her both vaginally and anally after she denied his proposition for sex.[9]

In the above cases (i.e., *Lampe*, *Warner*, and *Barnes*), we affirmed relatively modest departure sentences where the defendant had a criminal history or past wrongful sexual conduct. In contrast, defendant's life sentence dwarfs his guidelines range, which was comparatively low precisely because of his lack of prior criminal history. In enacting the sentencing guidelines, the Legislature determined as a general matter that defendants with a criminal history should receive

---

[8] Defendant was scored 15 points for OV 8. See MCL 777.38(1)(a) ("A victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense.").

[9] It is undisputed in this case that defendant did not use force in the commission of his crime.

"harsher sentences" than "first-time offenders." *Milbourn*, 435 Mich at 635. See also *Smith*, 482 Mich at 305 ("[E]verything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment.") (quotation marks and citation omitted; alternation by *Smith*). The trial court stated that it considered that defendant had no prior criminal history but was not persuaded that this mitigated against a life sentence. An updated presentence investigation report (PSIR) was not prepared on remand,[10] and the trial court ultimately determined that defendant was not entitled to resentencing on that basis because despite his positive three-year prison record, this information would not "have made a difference" or "changed [its] sentence" because the court assumed that defendant was complying with prison requirements. We conclude that the trial court's statements show that it failed to adequately consider the circumstances surrounding *the offender* as well as the circumstances of the offense. The Supreme Court has "emphasized its commitment to the principles that criminal punishment must fit the offender rather than the offense alone and that sound discretion must be exercised in sentencing matters." *People v Triplett*, 407 Mich 510, 513; 287 NW2d 165 (1980). Sentencing courts must make an effort "to balance both society's need for protection and its interest in maximizing the offender's rehabilitative potential." *Id*. (quotation marks and citation omitted). In this case, the life sentence imposed by the trial court did not sufficiently take into account defendant's lack of criminal history and his rehabilitative potential.

In sum, when the extent of the departure is considered with defendant's lack of criminal history, the prosecutor's recommended sentence, the sentence of defendant's codefendant and comparable caselaw, we conclude that the trial court abused its discretion by imposing a life

---

[10] Defendant also argues that after his pro se application to the Supreme Court resulted in the order of resentencing his counsel provided neither advice nor adequate representation. According to defendant, his entire interaction with counsel was receipt of a letter advising him of the resentencing and a two minute "small-talk" conversation before the prosecutor joined the Zoom resentencing hearing after which no further private conversation could be held. Defendant further points out that counsel never requested any information that could have served to mitigate the extent of the sentence, failed to advise defendant that he could be sentenced in person rather than by Zoom conference, did not request an updated PSIR despite the fact that three years had passed since the original sentencing during which defendant had not been issued any misconducts while in prison, did not provide defendant with his original PSIR or review it with him and made no challenges to the accuracy of the PSIR despite the presence of inaccuracies. Defendant asserts that this failed to meet the requirements of even the most basic level of representation particularly in light of the fact that the trial court had previously imposed a life sentence despite the far-lower guidelines recommendation. Given our holding that defendant is entitled to resentencing on other grounds, we need not address these issues or remand for a *Ginther* hearing. However, we agree that if these allegations are correct they indicate a fundamental failure of representation and remind the bar that a resentencing is a critical stage of the criminal proceeding at which a defendant is entitled to the effective assistance of counsel. See *People v Arnold*, 477 Mich 852 (2006). See also *Lampe*, 327 Mich App at 112 (explaining that when an appellate court orders "resentencing" without any specific instructions the case is returned to the trial court in a presentence posture).

sentence. Defendant is entitled to resentencing to a lesser term than imprisonment for life. An updated PSIR shall be prepared on remand before resentencing.

## III. RESENTENCING BEFORE A DIFFERENT JUDGE

We agree with defendant that resentencing before a different judge is warranted. To determine whether reassignment to a new judge on remand is required, the following factors are examined:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. [*People v Walker*, 504 Mich 267, 285-286; 934 NW2d 727 (2019) (citation omitted).]

In *People v LeMarbe (After Remand)*, 201 Mich App 45, 47, 49; 505 NW2d 879 (1993), this Court remanded the case for resentencing by a different trial judge after the defendant was twice sentenced by the same trial judge. We held that resentencing by a different trial judge was necessary to preserve the appearance of justice and to avoid waste and duplication. *Id*. at 49.

Here, the trial court twice imposed a life sentence despite a guidelines range of 51 to 85 months. At the initial sentencing, the trial court offered little to no explanation for the life sentence. On resentencing, the trial court failed to justify the extent of the substantial departure and to adequately take into account the circumstances surrounding the particular offender. Under these circumstances, resentencing by a different judge will preserve the appearance of justice and will not entail nonproportional waste or duplication.

Reversed and remanded for resentencing by a different trial judge. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates